## B. H. Farren et al., Plffs. in Err., v. E. L. Mintzer et al.

The declarations of the debtor in a judgment confessed for a valuable consideration are not admissible to affect the title of the judgment creditor to goods bought in upon execution on the judgment.

(Argued January 10, 1888.  Decided May 7, 1888.)

January Term, 1887, No. 433, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Error to Common Pleas No. 2 of Philadelphia County to review a judgment on a verdict for the plaintiffs in sheriff's interpleader, December term, 1885, No. 836. Affirmed.

This was a feigned issue between E. L. Mintzer and Annie R. Williams trading as the Quaker City Fruit Company, as plaintiffs, and B. H. Farren, J. W. Keenan, and A. H. Turner, copartners, trading as J. S. Farren & Company, as defendants, to determine the ownership of goods levied upon in execution by the defendants below as the property of E. L. Mintzer, Jr., and claimed by the plaintiffs below.

The facts as stated in the paper book of the plaintiff in error were as follows:

B. H. Farren et al., trading as J. S. Farren & Company, on June 28, 1884, sold and delivered to E. L. Mintzer, Jr., dealer in fruits and canned goods, doing business at 38 North Delaware avenue, Philadelphia, a certain lot of canned goods through their agent, J. William Jones, amounting to some $350. September 13, 1884, E. L. Mintzer, Jr., confessed the following judgments: To Annie R. Williams, $8,350; to E. L. Mintzer, Sr., $1,500; and September 18, 1884, two other judgments, one to M. Armstrong, $400, and the other to E. L. Mintzer, $480. At the sheriff's sale, which took place September 25, 1884, the bulk of the goods were purchased by a Mr. Chase, a clerk in the office of Mr. Edmunds, who was the counsel acting for both E. L. Mintzer, Jr., and Annie R. Williams. The evidence was conflicting as to who actually purchased the goods at sheriff's sale —the sheriff's officer, Mr. Fox, testifying that Mr. Chase bought the goods, while E. L. Mintzer's testimony was that he and Mrs. Williams purchased the goods at sheriff's sale on account of their executions, and formed a copartnership as the Quaker City Fruit Company, on September 30, 1884, which agreement of copartnership set out as the contribution of Annie R. Williams, stock delivered by her, amounting to $9,025; and the contribution of E. L. Mintzer, $2,380 in stock, and the share of each copartner was equal in the gains and losses; that this copartnership was already formed by Annie R. Williams and E. L. Mintzer, trading as the Quaker City Fruit Company, at the time of the levy of Farren & Company; that Annie R. Williams was the

widow of Harding Williams, deceased, whose estate was a special partner of E. L. Mintzer, Jr., and that E. L. Mintzer was the father of E. L. Mintzer, Jr., and, prior to the confession of the judgments, a salesman in his employ.

These were the facts established on the part of the claimants. The defendants then offered in evidence a certified copy of the renewal of a special partnership between Harding Williams's estate and E. L. Mintzer, Jr., made January 1, 1882, and to continue until January 1, 1885, by and under a power contained in the last will and testament of Harding Williams, deceased; the amount of capital contributed by the estate of Harding Williams by his administrator, Edward J. Bicking, was $7,725 in stock of goods duly appraised by appraisers appointed by the court. The will of Harding Williams, deceased, as admitted, disposed of his estate to Annie R. Williams and her children, as the residuary legatees. Mrs. Williams, being called for cross-examination by the defendants, said she had loaned E. L. Mintzer, Jr., money sometime in 1881, and that it was over $9,000, for which she supposed he had given her a promissory note which she never made any demand for until the time of the trouble; that her husband's estate had some $7,725 with E. L. Mintzer, Jr., which she had never made any demand for; that she had never received the $9,000 or the $7,725, or any part of it; that the money she loaned E. L. Mintzer, Jr., is still there; that her money was not to form the $7,725; it was loaned in 1881; that she could not produce the note E. L. Mintzer, Jr., had given her for the $9,000 loan; that it was her voluntary, independent loan of $9,000; that she got the judgment confession from E. L. Mintzer, Jr., on September 13, 1884, for $8,350 on account of the business trouble of the firm; that she authorized Mr. Edmunds to act for her to get the judgment and put everything in his hands; that he was acting at that time as the counsel for E. L. Mintzer, Jr., also; she was to receive interest on her $9,000 loan—not any interest in the stock; she did not know what the interest was, she collected it in dividends; her loan to Mintzer, Jr., was made up of forty shares United Railroads of New Jersey stock and thirty shares Pennsylvania Railroad stock; she drew the dividends on the stock—the last dividend she collected was on December last, 1886, and the other dividends on the other stock in 1887; the stock was registered in her name; she never received any part of the $7,725 placed with

E. L. Mintzer, Jr., by her husband's estate and did not know what had become of it; that she was one of the copartners with E. L. Mintzer, in the Quaker City Fruit Company; that there was always an account sent her from the Quaker City Fruit Company, but nothing mentioned about the moneys of her husband's estate; that she and her son are the only ones interested in this estate.

On re-examination by Mr. Edmunds, the witness said she meant the loan of $9,000 to E. L. Mintzer, Jr., was in bonds of the Pennsylvania Railroad and United Companies of New Jersey, and that she still collected the dividends, but that he, Mintzer, "spouted" the securities.

The defendants here offered J. William Jones as a witness to prove "that he was the agent of the defendants; that he sold the goods on the faith of the special capital contributed by Harding Williams's estate as special partner; that he called on Mintzer, Jr., at the time of the dissolution, and that he, Mintzer, told witness that he confessed the judgments to the widow of Harding Williams, Mrs. Annie R. Williams, for money due her from the special partnership; and to his, the said Mintzer's father, E. L. Mintzer, Sr." Whereupon the claimants objected and the offer was overruled and exception for defendant.

The defendants offered no other testimony, and the verdict and judgment were for the plaintiffs.

The assignment of error specified the action of the court in overruling the offer of evidence by the defendants as stated.

*William C. Mayne,* for plaintiffs in error.—The defendant's effort, by the production of the testimony offered and refused by the court, was to show that the confession of the judgment to Annie R. Williams (the wife of the deceased copartner of the defendant in the execution) was for the purpose of covering the amount of special capital contributed by her husband, and carried on by his representatives.

It is not contended that the rule which in its largest sense is part of the law of conspiracy is to be applied here: "That the declarations of one of the parties to a fraud, practised in connection with another for their joint benefit, are admissible to show the fraud committed." But in view of the fact that here a special capital, liable especially to the firm debts, surrounded by all the limitations and safeguards for the creditors

of the firm (act of March, 1836; Coffin's Appeal, 15 W. N. C. 52), is withdrawn from the creditors and no explanation vouchsafed to the pursuing creditor, the declaration of the defendant in the execution, "that his confession of judgment to the representative of the estate of Harding Williams, deceased, was for the purpose of covering the amount of the special capital contributed," was competent at the stage of the proceedings when offered; for it is settled law in this commonwealth that the least degree of concert or collusion between parties to an illegal transaction makes the act of one the act of all, and the act and declarations of one may be given in evidence to affect the others. Rogers v. Hall, 4 Watts, 359; Gibbs v. Neely, 7 Watts, 307; Peterson v. Speer, 29 Pa. 491; Hartman v. Diller, 62 Pa. 37; Confer v. McNeal, 74 Pa. 112; Souder v. Schechterly, 91 Pa. 87; Crawford v. Ritter, 1 Pennyp. 29.

The general rule that the declarations of a grantor, made after he has parted with his title, are not admissible for the purpose of impeaching it, has been modified so that when the bona fides of the transactions are assailed by creditors on the ground of fraud, and some testimony is introduced tending to show collusion, such subsequent declarations of the grantor are admissible. Hartman v. Diller, 62 Pa. 37; Souder v. Schechterly, 91 Pa. 83; Crawford v. Ritter, 1 Pennyp. 29.

*Henry R. Edmunds* for defendants in error.

PER CURIAM:

After a careful consideration of the statement of this case, and the able and ingenious argument of the learned counsel for the plaintiffs in error, we are unable to discover wherein the court below has been in fault. It is true that where a conspiracy to commit a fraud has been established, the declarations of one of the alleged conspirators may be given in evidence against his co-conspirators. But in the case before us there is no evidence of a fraudulent combination of the claimants as between themselves or others, to defraud J. S. Farren & Company or anyone else. The notes of evidence have not been furnished to us, hence, of them we can predicate nothing; but, from the statements of the plaintiffs in error, it is obvious that Mrs. Williams's judgment was confessed to her for a bona fide consideration. Such being the case, it is clear that the declarations

of E. L. Mintzer, her judgment debtor, were not admissible to affect her rights.

The judgment is affirmed.